Raymond Bernard HUTCHISON,

v.

BROOKSHIRE BROTHERS, INC., The City of Dayton, Texas, Conoco Incorporated, Craig McCown, Thaketcha Hill and Dennis Shelton.

Case No. 1:01–CV–539.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 13, 2002.

Grantham Harlan Coleman, Houston, TX, for Plaintiff.

William S. Helfand and Norman Ray Giles of Magenhein, Bateman and Helfand, Houston, TX, for Defendants City of Dayton and Richard McCown.

David L. Allen and Joseph Martin McElroy of Zelesky, Cornelius, Hallmark,

Roper & Hicks, Lufkin, TX, for Thaketcha Hill, Dennis Shelton and Brookshire Bros.

Lipscomb Norvell Jr. of Benckenstein, Norvell & Nathan, Beaumont, TX, Warren Reid Williamson, Conoco Inc. Legal Dept., Houston, TX, for Conoco, Inc.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SCHELL, District Judge.

This matter is before the court on a motion for summary judgment filed on May 15, 2002, by the City of Dayton, Texas, the Dayton Police Department, and Richard Craig McCown. (Dkt.# 36) On May 23, 2002, this court entered an order granting in part and denying in part a motion to dismiss filed by these same defendants. The other defendants in this action are Brookshire Brothers, Inc., as well as its employees Dennis Shelton and Thaketcha Hill. As a result of the court's May 23rd order, the following claims remain: (1) conspiracy to violate civil rights under the Fourth Amendment against the City of Dayton, McCown, Brookshire Brothers, Shelton, and Hill, and under the Fourteenth Amendment against the City of Dayton, McCown (except in his individual capacity), Brookshire Brothers, Shelton, and Hill, (2) intentional infliction of emotional distress against McCown, Brookshire Brothers, Shelton, and Hill, (3) assault and battery against McCown, Brookshire Brothers, Shelton, and Hill, and (4) false imprisonment against McCown, Brookshire Brothers, Shelton, and Hill.

## I. BACKGROUND

This action stems from events that took place on or about August 3, 1999. Plaintiff stopped at a Conoco Gas Station managed by Brookshire Brothers, located in the City of Dayton, Texas. Plaintiff prepaid for $8.00 worth of gas and then allegedly asked Thaketcha Hill, an employee of Brookshire Brothers, to set the pump to shut off after $8.00 was pumped. It is undisputed that plaintiff pumped more than $8.00 worth of gas. According to plaintiff, he manually set the pump handle to pump gas automatically and then attended to his vehicle. When plaintiff noticed the pump had not been turned off at $8.00, he shut off the pump and then asked Hill why she did not shut off the pump at $8.00 as he requested. According to plaintiff, Hill was indifferent, but insisted that plaintiff pay the additional $10.63 that was pumped. Plaintiff stated that he did not have the additional money, and Hill directed plaintiff to take the matter up with her manager.

It is undisputed that Dennis Shelton, manager of the Brookshire Brothers store, reiterated Hill's position that plaintiff had to pay for the extra gas pumped. According to plaintiff, he then offered to leave his driver's license and several work tools as proof that he would return later and pay the remaining amount. Shelton refused and demanded immediate payment or else plaintiff and his vehicle would not be allowed to leave the premises. When plaintiff suggested Shelton retrieve the excess gas, Shelton refused and instead allegedly stated he would supply a water bucket and hose for plaintiff to use to siphon the gas from the vehicle. Plaintiff refused to do so.

At this point, Shelton allegedly called the Dayton Police Department. When police officer Richard Craig McCown arrived, plaintiff and Shelton told him what had happened. McCown allegedly insisted plaintiff be forced to siphon the gas from his vehicle using the hose and bucket supplied by Shelton. According to plaintiff, McCown agreed with Shelton that plaintiff had to suck and siphon at least $10.63

worth of gasoline from his vehicle or else "come go with him", as he adjusted his hand on his gun holster. Plaintiff's Second Amended Original Complaint, ¶ 10.

Allegedly knowing that such an activity was dangerous to his health, but fearing jail or worse from McCown, plaintiff began to siphon the gas from his vehicle. As plaintiff sucked the gas from the vehicle with minimal success, McCown allegedly demanded plaintiff try harder. After a longer hose was brought to plaintiff, he proceeded to suck and siphon ten buckets of gas from his vehicle before he was allowed to stop. During this time, plaintiff says he was forced to inhale the gasoline fumes and swallow gasoline down his throat. In addition, passersby allegedly witnessed plaintiff's humiliation.

The process of siphoning the gas from his vehicle allegedly left plaintiff light headed and dizzy. In addition, plaintiff's eyes watered constantly, and his lips, mouth, tongue, and throat felt "as if they were being burned by fire." Plaintiff's Second Amended Original Complaint, ¶ 13. Also, "[p]laintiff's stomach began to burn as if a million needles were being pressed against the inside of his stomach." Plaintiff's Second Amended Original Complaint, ¶ 13. Plaintiff complained to Shelton and McCown about these symptoms, but he says he was forced to continue siphoning.

After plaintiff was permitted to leave the premises, he could only drive a short distance before he allegedly began to pass out. His symptoms intensified, and he began to vomit uncontrollably. At this point, plaintiff allegedly called a representative for Conoco, Inc., and told him he was going to the hospital. Plaintiff was told Conoco would have to investigate his claims.

Plaintiff allegedly drove himself to Memorial Hospital in Houston, Texas. The hospital called the Poison Control Center in Atlanta, Georgia to get instructions on plaintiff's condition and treatment. After being treated, plaintiff left the hospital. After one hour, plaintiff allegedly "began to vomit repeatedly, suffered severe abdominal pain, hot and cold flashes, mouth dryness and intense burning sensation from efforts to urinate and belch." Plaintiff's Second Amended Original Complaint, ¶ 16. Plaintiff returned to the hospital where he was treated again.

In his Second Amended Complaint, plaintiff brings multiple causes of action. Count I alleges conspiracy to violate civil rights against each of the defendants. Each of the defendants allegedly conspired to violate plaintiff's Fourth and Fourteenth Amendment constitutional rights to be free from illegal search and seizure, illegal arrest and detention, illegal abuse, coercion and intimidation, cruel and unusual punishment, and violation of civil rights under "Section 1983 of the United States Constitution." Plaintiff's Second Amended Original Complaint, ¶ 18. Additionally, plaintiff alleges Shelton and McCown conspired to deprive plaintiff of his Fourteenth Amendment substantive due process rights. Plaintiff alleges Shelton was responsible for initiating the incident, and McCown under color of law added to the incident by "creating/heightening what became a clear and present danger." Plaintiff's Second Amended Original Complaint, ¶ 18.

Count II alleges intentional infliction of physical and emotional distress against McCown, Brookshire Bros., Shelton, and Hill. Plaintiff contends Shelton and McCown, willfully and maliciously, and with reckless disregard for plaintiff's rights and life, caused plaintiff to suffer physical and emotional distress. Plaintiff argues he is thus entitled to exemplary damages.

Count III alleges assault and battery against McCown, Brookshire Bros., Shelton, and Hill. Plaintiff alleges he sustained

medical bills and other expenses as a proximate result of defendants' use of force causing plaintiff ingest gasoline. Plaintiff asserts his injuries have caused and will continue to cause great pain and suffering, both mental and physical, for which he is entitled to compensatory and exemplary damages.

Count IV alleges false imprisonment against McCown, Brookshire Bros., Shelton, and Hill. Plaintiff alleges these defendants falsely imprisoned plaintiff "by refusing to allow him to leave the store premises." Plaintiff's Second Amended Original Complaint, ¶ 27. Plaintiff also alleges damages suffered as a proximate result of this false imprisonment.

Count V alleges respondeat superior against Brookshire Brothers as the employer of Shelton. Plaintiff sues each defendant for actual and compensatory damages of not less than $5,000,000. In addition, plaintiff sues "for judgment against the individual defendants and Brookshire Brothers Super Market, Ltd., for exemplary damages not less than $50,000,000." Plaintiff's Second Amended Original Complaint, ¶ 33.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *See id.* at 248, 106 S.Ct. 2505. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. 2505. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. In this instance, the movant is not required to offer evidence to negate the nonmovant's claims. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir.1990). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The evidence of the nonmovant, however, is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* However, "in the event a party fails to oppose a motion in the manner prescribed herein,

the court will assume that the party has no opposition." Local Rule CV 7(d).

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants the City of Dayton, Texas, the Dayton Police Department, and Craig McCown (hereinafter "defendants") filed a motion for summary judgment on May 15, 2002. The plaintiff has not filed a response to the motion. In this motion, defendants argue that they did not engage in any unconstitutional conduct or conspire to engage in unconstitutional conduct, that McCown is entitled to qualified immunity under Count I, the City of Dayton is entitled to governmental immunity for plaintiff's state law claims, McCown is entitled to official immunity for plaintiff's state law claims, the evidence disproves plaintiff's state law claims, and the Dayton Police Department lacks the capacity to be sued.

### A. Capacity of the Dayton Police Department to be Sued

Defendants argue that the Dayton Police Department lacks the capacity to be sued, and therefore plaintiff's claims against the Dayton Police Department are redundant and unnecessary and must be dismissed. In this court's previous order, the court held that plaintiff failed to demonstrate that the City of Dayton has granted the Dayton Police Department the capacity to sue or be sued, and thus defendants' motion to dismiss plaintiff's claims as to the Dayton Police Department was granted. Therefore, this issue is MOOT.

### B. Conspiracy to Engage in Unconstitutional Conduct

#### (i) Count I—Conspiracy

Plaintiff alleges, in Count I of his Second Amended Complaint, conspiracy to violate civil rights under the Fourth, Eighth, and Fourteenth Amendments. Under Texas law, a conspiracy is defined as "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968) (quoting *Great Nat'l Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 635 (1964); *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550 (1937)). The elements of a conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Peavy v. WFAA TV, Inc.*, 221 F.3d 158, 172 (5th Cir.2000) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983)). Here, the defendants have presented evidence in the form of an affidavit of McCown that states plaintiff chose to siphon the gasoline "of his own free will." Affidavit of Richard Craig McCown, p. 2, ¶ 7. This evidence indicates that there was no conspiracy between defendants. Alternatively, plaintiff's deposition indicates that plaintiff was opposed to sucking the gas, while Shelton insisted plaintiff do so. *See* Deposition of Raymond Bernard Hutchison, p. 50, ll. 10–19. When Officer McCown arrived on the scene, McCown adopted the position of Shelton that plaintiff should be the one to suck out the gas. *See id.* at p. 52, ll. 12–23. This evidence does support plaintiff's allegation of a conspiracy. In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Therefore, the summary judgment evidence supplied by the movants raises a genuine issue of material fact sufficient to survive summary judgment with respect to the existence of a conspiracy and summary judgment is therefore DENIED.

### (ii) Fourth Amendment

 Defendants argue that the evidence disproves the allegation that they conspired to engage in unconstitutional conduct. Defendants assert that no seizure and arrest occurred, and that therefore there was no violation of the Fourth Amendment. Under the Supreme Court's *Mendenhall* test, "a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In *Mendenhall,* the Court provided examples of possible seizures where a person made no attempt to leave, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870. Here, in the summary judgment evidence provided by defendants, in the form of a deposition of plaintiff, the following exchange occurs:

> Q: Okay. What I'm understanding you to say is by poking you in the chest, Officer [McCown] intimidated you or put you in fear; and then because of that fear, you then siphoned the gas?
>
> A: The combination of him, the screaming or hollering, the poking in the chest, the grabbing on his gun, all that in combination, yes.

Deposition of Raymond Bernard Hutchison, p. 113, ll. 12–18. This evidence is sufficient to pass the *Mendenhall* test. Therefore, defendants motion for summary judgment on plaintiff's claim of conspiracy to violate plaintiff's civil rights under the Fourth Amendment is DENIED except with respect to the City of Dayton as explained in part III.B.(v) of this opinion.

### (iii) Eighth Amendment

 Defendants assert that both the evidence and the law dictate a finding that plaintiff has no claim under the Eighth Amendment. In this court's May 23, 2002, Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, this court noted that the Supreme Court has stated, "it is not surprising to find that every decision of this Court considering whether a punishment is 'cruel and unusual' within the meaning of the Eighth and Fourteenth Amendments has dealt with a criminal punishment." *Ingraham v. Wright,* 430 U.S. 651, 666, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). This court granted defendants' motion to dismiss Count I of plaintiff's complaint as to cruel and unusual punishment under the Eighth Amendment, stating, "plaintiff has failed to state a claim for conspiracy to commit cruel and unusual punishment under the Eighth Amendment." Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, p. 14. Therefore, defendants' motion for summary judgment on plaintiff's claim for conspiracy to violate civil rights under the Eighth Amendment is MOOT.

### (iv) Fourteenth Amendment

 Defendants assert that the summary judgment evidence disproves plaintiff's claim of conspiracy to violate civil rights under the due process clause of the Fourteenth Amendment. It is uncommon for the due process clause to provide a guarantee of safety or security from private acts. Charges of excessive force are usually analyzed under the Fourth Amendment, not the Fourteenth Amendment. "Because the Fourth Amendment provides an explicit textual source of constitutional

protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) There are, however, two circumstances under which a plaintiff may succeed in stating a claim of a violation of substantive due process under the Fourteenth Amendment. These are "when the state has a special relationship with the person and when the state exposes a person to a danger of its own creation." *McClendon v. City of Columbia*, 258 F.3d 432, 436 (5th Cir.2001). In this court's earlier order, the non-existence of a special relationship between plaintiff and McCown was noted. See Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, p. 15. Defendants contend that the evidence presented disproves plaintiff's claim under the state created danger theory. The state created danger theory states, "[w]hen state actors knowingly place a person in danger, the due process clause of the constitution has been held to render them accountable for the foreseeable injuries that result from their conduct, whether or not the victim was in formal state 'custody'." *Johnson v. Dallas Independent School District*, 38 F.3d 198, 200 (5th Cir.1994). "[S]tate actors may be liable if they created the plaintiffs' peril, increased their risk of harm, or acted to render them more vulnerable to danger." *Id.* In addition, in order for state actors to be held liable it must be shown the state actors possessed a culpable mental state. "Thus the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed

for the third party's crime to occur." *Id.* at 201.

■■■ Here, plaintiff's deposition indicates that plaintiff adamantly refused to suck the gasoline through a hose before McCown arrived on the scene. See Deposition of Raymond Bernard Hutchison, p. 50, ll. 2–14. After McCown arrived on the scene, he induced plaintiff to suck the gas. According to plaintiff, when Officer McCown arrived, he gave plaintiff three options, including paying for the extra gas, which plaintiff says he could not do due to a lack of funds, or siphoning the gas, or going with the officer, presumably to jail. Plaintiff testified in his deposition that Officer McCown coerced him further by poking plaintiff in the chest with his finger, placing his hand on plaintiff's shoulder and placing his hand on his gun. See Deposition of Raymond Bernard Hutchison, p. 52, ll. 10–23, p. 70, ll. 1–25, p. 80, ll. 13–19, p. 113, ll. 12–18. Therefore, evidence exists supporting plaintiff's claim for conspiracy to violate his civil rights under the substantive due process clause of the Fourteenth Amendment. However, as explained in part III.B.(v) of this opinion, the City of Dayton is nevertheless entitled to summary judgment on this claim. And, as a result, the plaintiffs remaining claim against Officer McCown in his official capacity is also extinguished.

**(v) Liability of the City of Dayton for section 1983 violations**

■■■ In his second amended complaint, plaintiff seeks to hold the City of Dayton, as well as McCown, liable for conspiracy to violate his civil rights. The Fifth Circuit has stated, "municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston,*

237 F.3d 567, 578 (5th Cir.2001). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* at 578. Here, the City of Dayton presents uncontroverted evidence in the form of an affidavit of Roland Douzai, Chief of Police of the City of Dayton, stating, "the City of Dayton has no policies, procedures or customs which would cause a Dayton police officer to violate any individual's Constitutional rights. To the contrary, the City of Dayton has policies which prohibit its police officers from violating the Constitutional rights of its inhabitants." Affidavit of Roland Douzai, p. 1–2, ¶ 3. Defendants' uncontroverted evidence establishes that the City of Dayton has no official policy (and thus no policymaker) that could be attributable to the alleged unconstitutional actions of Officer McCown. Therefore, defendants' motion for summary judgment as to claims against the City of Dayton for conspiracy to violate plaintiff's civil rights under the Fourth and Fourteenth Amendments is GRANTED.

### (vi) Application of Qualified Immunity to Officer McCown

Defendants argue that Officer McCown is entitled to qualified immunity. The qualified immunity doctrine shields public officials acting within the scope of their official duties from civil liability. *See Kipps v. Caillier,* 197 F.3d 765, 768 (5th Cir.1999). In order to defeat defendants' claim of qualified immunity, plaintiff must satisfy a three part test. "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of a constitutional right at all." *Kipps,* 197 F.3d at 768 (quoting *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). Here, the court has concluded that plaintiff has succeeded in alleging a claim for conspiracy to violate his civil rights. Specifically, the court has concluded that plaintiff has alleged claims for conspiracy to violate his rights pursuant to the Fourth Amendment and the substantive due process clause of the Fourteenth Amendment. Thus plaintiff has satisfied the first part of the three part test.

Second, the court "must determine whether that right was clearly established at the time of the violation." *Kipps,* 197 F.3d at 768 (quoting *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692). The court found, in its Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, that plaintiff's Fourth Amendment claim was clearly established as of August 1999, when the alleged violation occurred, but that plaintiff's substantive due process claim under the Fourteenth Amendment was not established in the Fifth Circuit until after August of 1999. *See* Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement, p. 17. Therefore, plaintiff has satisfied the second part of the three part test with respect to his Fourth Amendment claim, but not his Fourteenth Amendment claim against McCown in his individual capacity.

Third, the court "must determine whether the record shows that the violation occurred, or at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right." *Kipps,* 197 F.3d at 768 (quoting *Morris v. Dearborne,* 181 F.3d 657, 665 (5th Cir.1999); quoting *Kerr v. Lyford,* 171 F.3d 330, 339 (5th Cir.1999)). The record includes defendants' summary judgment evidence, consisting of affidavits

and the deposition of plaintiff. In plaintiff's deposition, he describes becoming fearful as a result of actions by Officer McCown. As a result of this fear, plaintiff asserts he siphoned the gas. *See* Deposition of Raymond Bernard Hutchison, p. 113, ll. 12–18. As previously stated, this evidence is sufficient to deny defendants' motion for summary judgment as to plaintiff's Fourth Amendment claim. Therefore, a genuine issue of material fact exists as to whether McCown violated plaintiff's Fourth Amendment rights. Thus plaintiff satisfies the third part of the three part test. Therefore, plaintiff has defeated Officer McCown's claim for qualified immunity as to plaintiff's Fourth Amendment claim. Defendant Officer McCown is entitled, however, to qualified immunity on plaintiff's Fourteenth Amendment claim as stated by this court in its May 23rd 2002 order.

### C. Plaintiff's Common Law Claims

#### (i) Count II—Intentional Infliction of Physical and Emotional Distress

In his Second Amended Complaint, Plaintiff brings the common law claims of intentional infliction of emotional distress, assault and battery, and false imprisonment against defendants. While the Texas Supreme Court has adopted the tort of intentional infliction of emotional distress, any intentional infliction of physical harm would fall under plaintiffs' claim for assault and battery.

In order to recover damages for intentional infliction of emotional distress, plaintiff must prove "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by plaintiff was severe." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). Extreme and outrageous conduct has been defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993) (quoting Restatement (Second) of Torts, section 46 cmt. d (1965)). Here, plaintiff's deposition makes clear that defendant McCown acted intentionally. *See, e.g.*, Deposition of Raymond Bernard Hutchison, p. 52, ll. 10–23. It is also clear from plaintiff's deposition that defendant's conduct led plaintiff to suck the gasoline through a hose. *See id.* There has been no evidence presented, however, to indicate that plaintiff suffered severe emotional distress. The movant may discharge its burden of proof by showing that there is an absence of evidence to support the nonmovant's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. In addition, "[i]n the event a party fails to oppose a motion in the manner prescribed herein, the court will assume that the party has no opposition." Local Rule CV 7(d). Furthermore, because the plaintiff's state law claims for intentional infliction of emotional distress, assault and battery, and false imprisonment against the City of Dayton have all been dismissed pursuant to § 101.057 of the Texas Civil Practice and Remedies Code, those same claims against Officer McCown are barred by § 101.106 of the Texas Civil Practice and Remedies Code. Therefore, defendants' motion for summary judgment on plaintiff's intentional infliction of emotional distress claim is hereby GRANTED as to Officer McCown, the court having previously granted the motion to dismiss this claim against the City of Dayton.

#### (ii) Count III—Assault and Battery

Under Texas law, "an assault is ... an offense against the peace and dignity of the state, as well as an invasion of

private rights." *Texas Bus Lines v. Anderson,* 233 S.W.2d 961, 964 (Tex.Civ. App.—Galveston 1950, writ ref'd n.r.e.). Thus, "the definition of assault, whether in a criminal or civil trial, is the same." *Moore's, Inc. v. Garcia,* 604 S.W.2d 261, 264 (Tex.Civ.App.—Corpus Christi, 1980). The Texas Penal Code definition of assault is found at § 22.01.

 (a) A person commits an offense if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Penal Code, § 22.01. "A person commits a battery if he intentionally or knowingly causes physical contact with another when he knows or should reasonably believe the other person will regard the contact as offensive or provocative." *Bailey v.C.S.,* 12 S.W.3d 159, 162 (Tex.Ct.App.—Dallas, 2000). Here, in his deposition, excerpts of which have been supplied by the moving defendants, plaintiff indicates that McCown poked or punched plaintiff in the chest with his index finger. *See* Deposition of Raymond Bernard Hutchison, p. 70, ll. 1–16. Nevertheless, as stated earlier, because the plaintiffs state law claims against the City of Dayton have all been dismissed, this state law claim against Officer McCown is barred by § 101.106 of the Texas Civil Practice and Remedies Code. Therefore, defendants' motion for summary judgment on plaintiff's claim for assault and battery against Officer McCown is hereby GRANTED, the court having previously granted the motion to dismiss this claim against the City of Dayton.

### (iii) Count IV—False Imprisonment

 The tort of false imprisonment is comprised of three elements. These are, "(1) willful detention; (2) without consent; and (3) without authority of law." *Sears, Roebuck & Company v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985). Here, evidence in the form of McCown's affidavit states that plaintiff was offered a ride home to get money to pay for the gas. *See* Affidavit of Richard Craig McCown, p. 2, ¶ 6. In plaintiff's deposition, plaintiff indicates that he was given three choices: get a ride home from McCown to get money, suck the gas, or go with McCown. Plaintiff did not have money at home and refused to go with McCown. *See* Deposition of Raymond Bernard Hutchison, p. 52, ll. 5–23. Elsewhere in plaintiff's deposition he indicates that he felt the only viable option given to him by McCown was to suck the gas. *See id.* at p. 63, ll. 4–19, p. 64, ll. 5–21, p. 68, ll. 3–19. In addition, plaintiff's deposition includes statements regarding Officer McCown that could be interpreted by a reasonable person as indicating he was not free to leave. *See id.,* at p. 113, ll. 12–18. This evidence is sufficient to overcome summary judgment with regard to the first two elements of false imprisonment.

As for the third element of false imprisonment, under Texas law, privilege to detain another without consent is found in the Texas Civil Practice and Remedies Code, § 124.001: "A person who reasonably believes that another has stolen or is attempting to steal property is privileged to detain that person in a reasonable manner and for a reasonable time to investigate ownership of the property." Tex. Civ. Prac. & Rem.Code § 124.001. This statute apparently provides such authority to private citizens. As a police officer, defendant McCown may have broader authority to detain someone suspected of

theft. Any detention must, however, be done in a reasonable manner.

As established by excerpts from the plaintiff's deposition attached to defendants' motion for summary judgment, there is a genuine issue of material fact as to whether the detention testified to by plaintiff in his deposition was done in a reasonable manner and, therefore, legally authorized. However, notwithstanding this fact issue, because plaintiff's state law claims against the City of Dayton have been dismissed, this state law claim against Officer McCown is barred by § 101.106 of the Texas Civil Practice and Remedies Code. Defendants' motion for summary judgment as to plaintiff's claim of false imprisonment is hereby GRANTED as to Officer McCown, the court having previously granted the motion to dismiss this claim against the City of Dayton.

## IV. CONCLUSION

Therefore, upon consideration of the City of Dayton's, the Dayton Police Department's, and Craig McCown's Motion for Summary Judgment, the court is of the opinion that the motion should be GRANTED in part and DENIED in part. As a result of this order, the following claims remain in this lawsuit: (1) conspiracy to violate civil rights under the Fourth Amendment against McCown, Brookshire Brothers, Shelton, and Hill, and under the Fourteenth Amendment against Brookshire Brothers, Shelton, and Hill, (2) intentional infliction of emotional distress against Brookshire Brothers, Shelton, and Hill, (3) assault and battery against Brookshire Brothers, Shelton, and Hill, and (4) false imprisonment against Brookshire Brothers, Shelton, and Hill.

It is so ORDERED.